**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MARJORIE WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> US DEPARTMENT OF HEALTH AND ) <br> HUMAN SERVICES *d/b/a Affinia Healthcare*, ) <br> ) <br> Defendant. ) | Case No. 4:21-cv-01049-MTS |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant United States of America's Motion to Dismiss, Doc. [9], for lack of subject matter jurisdiction. The parties have fully briefed the matter at issue, and the Court heard oral argument and received supplemental briefing. After consideration, the Court concludes its subject matter jurisdiction exists in this case, and it therefore will deny the Motion to Dismiss.

**I.     Background**

The St. Louis Dental Center (the "Center") is a partnership, in the vernacular sense of the term, between A.T. Still University's Missouri School of Dentistry & Oral Health ("MOSDOH"), a private university, and Affinia Healthcare ("Affinia"), a Federally Qualified Health Center with multiple locations within the St. Louis metropolitan area. In October 2019, Plaintiff Marjorie Williams underwent dental work at the Center under the care of a MOSDOH student, Reid Higginbotham, and Dr. Clifton Whitworth, a dentist who worked for Affinia and also was approved by MOSDOH to serve as an adjunct faculty member. Plaintiff alleges that due to negligence in her care and treatment, she sustained a compound fracture to her jaw.

Plaintiff brought the instant suit asserting a negligence claim against the United States Department of Health and Human Services, doing business as Affinia, under the Federal Tort Claims Act (FTCA).[1]  The FTCA acts as a limited waiver of the United States' sovereign immunity; for tort claims, it makes the U.S. liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  Thus, the U.S. generally would be liable if there is a "private analogue" under "the law of the place where the relevant act or omission occurred."  *Sorace v. United States*, 788 F.3d 758, 763 (8th Cir. 2015).  Since Missouri law provides for a cause of action for medical negligence, see Mo. Rev. Stat. § 538.210, an individual can state a claim under the FTCA based on a cause of action for medical negligence under Missouri law.

Here, the government concedes that Affinia dentists are deemed federal employees covered under the FTCA when they perform dental services, and therefore the government would be liable for their negligence provided all other prerequisites of the FTCA are met, Doc. [10] at 2, but the government argues that Dr. Whitworth was under MOSDOH's sole control and was acting as an adjunct faculty member of MOSDOH during Plaintiff's treatment, not in his role as an Affinia dentist.  The government maintains that though Dr. Whitworth continued to be an employee of Affinia, he was a borrowed servant under Missouri law because he was under the control of MOSDOH, not Affinia.  *See Bovier v. Simon Crane Serv., Inc.*, 381 S.W.3d 388, 390 (Mo. Ct. App. 2012) (discussing the borrowed servant doctrine under Missouri law).  Alternatively, the government argues that Dr. Whitworth was MOSDOH's employee during Plaintiff's treatment.  Doc. [23] at 8.  And, lastly, the government argues that Dr. Whitworth was

---

[1] Plaintiff brought suit against the "US Department of Health and Human Services d/b/a Affinia Healthcare."  The proper party is the United States itself.  The Court will grant Plaintiff leave to correct this issue.  For simplicity, the Court will refer to Defendant as "the government."

not an Affinia employee for FTCA purposes when he functioned as an adjunct faculty member for MOSDOH.

If any of the government's arguments are correct, Plaintiff's claim would fail, and the FTCA therefore would not waive sovereign immunity, which means this Court would have no jurisdiction in this case.  *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (explaining that "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional" such that if a tort claim fails, the United States "necessarily retained sovereign immunity," which "depriv[es] the court of subject-matter jurisdiction").  "The burden of proving subject matter jurisdiction falls on the plaintiff."  *V S Ltd. P'ship v. Dep't of Housing and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).  Therefore, the Court will determine whether Plaintiff has established subject matter jurisdiction in this case or whether the government's arguments are well grounded.

**II.     Discussion**

        a. *Dr. Whitworth was an employee of Affinia under Missouri law*.

A common law cause of action for injury caused by the negligence of a health care provider no longer exists under Missouri law.  Mo. Rev. Stat. § 538.210.1 (abolishing "any [] common law cause of action" against a "health care provider for personal injury" arising out of the "rendering of" "health care services").  Instead, the Missouri General Assembly replaced the common law cause of action with a statutory cause of action.  *Id.*; *Ordinola v. Univ. Physician Assocs.*, 625 S.W.3d 445, 449 (Mo. banc 2021) ("Medical negligence actions remained a common law claim until the General Assembly amended certain statutes in 2015.").  The elements of the statutory claim are "that the health care provider failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the

defendant's profession" and "that such failure directly caused or contributed to cause the plaintiff's injury or death." Mo. Rev. Stat. § 538.210.1.

Here, Dr. Whitworth and Affinia are "health care provider[s]." Mo. Rev. Stat. § 538.205(6).[2]  The government does not dispute that conclusion.  But Affinia could only be liable under § 538.210 for Dr. Whitworth's actions or omissions if Dr. Whitworth was Affinia's "employee." Mo. Rev. Stat. § 538.210.4.  At one time, Missouri's statutory cause of action did not define "employee." *See Jefferson ex rel. Jefferson v. Mo. Baptist Med. Ctr.*, 447 S.W.3d 701, 709 (Mo. Ct. App. 2014).  Missouri courts chose to define the term "according to common-law principles of agency." *Id.*  Before the events at issue here occurred, however, Missouri amended its statute and defined "employee" as "any individual who is directly compensated by a health care provider for health care services[3] rendered by such individual" and also "other nonphysician individuals who are supplied to a health care provider by an entity that provides staffing."  Mo. Rev. Stat. § 538.205(3); *accord J.B. ex rel. Bullock v. Mo. Baptist Hosp. of Sullivan*, 4:16-cv-01394-ERW, 2018 WL 572026, at *3 (E.D. Mo. Jan. 26, 2018) (discussing the change in Missouri law).

The government has not argued that Affinia did not directly compensate Dr. Whitworth for the health care services he provided to Plaintiff.  That is, it has not argued that Dr. Whitworth was not Affinia's "employee" as defined under Mo. Rev. Stat. § 538.205(3) during Plaintiff's treatment.  Plaintiff has provided sufficient evidence that, without any refutation from the

---

[2] The statute defines "health care provider" as "any physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility including those licensed under chapter 198, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate." Mo. Rev. Stat. § 538.205(6).

[3] The statute defines "health care services" as "any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized."  Mo. Rev. Stat. § 538.205(7).

government, satisfies Plaintiff's burden of establishing Dr. Whitworth was Affinia's "employee" under § 538.210. This includes, for example, a copy of a billing statement for Plaintiff's treatment where Plaintiff is directed to make payments to Affinia for Dr. Whitworth's care. *See, e.g.*, Doc. [22] at 9.

Though the government does not dispute that Dr. Whitworth was Affinia's employee as defined under Mo. Rev. Stat. § 538.205(3), see Doc. [23] at 6, it argues that Dr. Whitworth was MOSDOH's "employee" under the latter statutory definition—"other nonphysician individuals who are supplied to a health care provider by an entity that provides staffing," Mo. Rev. Stat. § 538.205(3). It argues that "Affinia staffed MOSDOH's dental clinic with nonphysician Adjunct Faculty" since Affinia provided dentists, like Dr. Whitworth, to MOSDOH. Doc. [23] at 8. The Court is not convinced, though, that Affinia is "an entity that provides staffing." Mo. Rev. Stat. § 538.205(3). The statute does not define an employee merely as any nonphysician individual who is supplied to a health care provider. Rather, it covers only nonphysician individuals supplied to a health care provider *by an entity that provides staffing*. If the statute is read such that all nonphysician individuals supplied to a health care provider are employees, it would render "by an entity that provides staffing" mere surplusage. *Piercy v. Mo. State Highway Patrol*, 583 S.W.3d 132, 140 (Mo. Ct. App. 2019) ("[A] court should not interpret a statute so as to render some phrases mere 'surplusage.'" (citing *Middleton v. Mo. Dep't. of Corr.*, 278 S.W.3d 193, 196 (Mo. banc 2009))); *Brandsville Fire Prot. Dist. v. Phillips*, 374 S.W.3d 373, 381 (Mo. Ct. App. 2012) (applying the canon against surplusage because courts presume that a legislature intended "each word, clause, sentence, and provision of a statute [to] have effect and should be given meaning" (quoting *Bolen v. Orchard Farm R-V Sch. Dist.*, 291 S.W.3d 747, 751 (Mo. Ct. App. 2009))).

Additionally, even if Dr. Whitworth were MOSDOH's employee under the latter statutory definition, there is nothing to indicate that he could not *also* be Affinia's employee under the same definition. That is, the government has not explained how Dr. Whitworth simultaneously could not have been an Affinia employee at the time if he also was a MOSDOH employee since the term here is a statutorily defined one, not a term defined by common law. *Cf. U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019) ("It is now well-settled that an individual can have more than one employer for Title VII purposes.").

      b. *Dr. Whitworth was not a borrowed servant.*

Under Missouri law, where an employer-employee relationship exists, the doctrine of *respondeat superior* holds the employer vicariously liable for injury-causing tortious conduct of the employee done within the course and scope of his or her employment. *See Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 29 (Mo. banc 2012); *Koon v. Walden*, 539 S.W.3d 752, 766 (Mo. Ct. App. 2017). But Missouri law also recognizes the "borrowed servant doctrine," which will "block a general employer's vicarious liability for its employee's negligence." *Wren v. Vaca*, 922 S.W.2d 408, 410 (Mo. Ct. App. 1996). Here, the government argues that Dr. Whitworth was a borrowed servant such that Affinia, Dr. Whitworth's general employer, cannot be held vicariously liable for Dr. Whitworth's negligence.

An employee is a borrowed servant under Missouri law if three elements are present: (1) the employee's consent to work for the special employer; (2) the actual entry by the employee upon the work for the special employer pursuant to either an express or implied contract; and (3) the power of the special employer to control the details of the work to be performed. *Bovier v. Simon Crane Serv., Inc.*, 381 S.W.3d 388, 390 (Mo. Ct. App. 2012); *see also Ballard v. Leonard Bros. Transp. Co.*, 506 S.W.2d 346, 350 (Mo. 1974).

At issue in this case is the power of control over Dr. Whitworth, the third element, which long has been described as the "essential" factor in determining whether the employee was a borrowed servant as to the questioned act. *See McFarland v. Dixie Mach. & Equip. Co.*, 153 S.W.2d 67, 71 (Mo. 1941) ("Clearly our decisions have made this right of control, or direction, of the physical activities in performing service, the essential test to determine either who is the master of a particular servant as to any questioned act . . . ."); *accord Garven v. Chicago, R.I. & P. Ry. Co.*, 75 S.W. 193, 193 (Mo. Ct. App. 1903) (explaining that the "rule itself is founded on the principle that a master's liability results from his right of control and direction of his servants" such that "liability does not attach" to "acts of negligence of the servant, committed while the servant is not under the master's control"); *see also Huff v. Belford Trucking Co.*, 809 S.W.2d 71, 73 (Mo. Ct. App. 1991) (explaining that "[t]he core of the 'borrowed servant' defense is that the general employer . . . has surrendered to the borrower . . . all control over the employee, so that the employee has become, with respect to the work for which he was loaned, exclusively the employee of the special employer or borrower").

To succeed, the government, as the general employer, must have "totally relinquished any right of control over [Dr. Whitworth's] performance of the particular work at issue." *Wren*, 922 S.W.2d at 410. And this control must have been "full" in the performance of the particular work. *Id.* It will not be enough if Dr. Whitworth was but "partially under the control of [MOSDOH]." *Id.* (quoting *Koirtyohann v. Washington Plumbing & Heating Co.*, 471 S.W.2d 217, 219 (Mo. 1971)); *see also Wills v. Belger*, 212 S.W.2d 736, 739 (Mo. 1948) ("The fact that the servant is partially under the control of the third person will not release the original master for any wrongful act done by the servant in the ordinary course of his employment." (quoting *O'Brien v. Rindskopf*, 70 S.W.2d 1085, 1088 (Mo. 1934))). MOSDOH would have needed to have controlled not only "the details of the work to be performed" but also "how" the work was

- 7 -

done and whether it would "stop or continue."  *Ballard*, 506 S.W.2d at 350 (quoting *Ellegood v. Brashear Freight Lines*, 162 S.W.2d 628, 633 (Mo. Ct. App. 1942)).

Justice Cardozo once wrote that "[t]he law that defines or seeks to define the distinction between general and special employers is beset with distinctions so delicate that chaos is the consequence," and that "[n]o lawyer can say with assurance in any given situation when one employment ends and the other begins."  Benjamin N. Cardozo, *A Ministry of Justice*, 35 Harv. L. Rev. 113, 121 (1921).  Fortunately, though, the distinctions here are not as delicate as they otherwise might be because MOSDOH and Affinia had an Agreement related to the Center, which provides that Affinia retained control over Dr. Whitworth.  Doc. [9-2] (the "Agreement").  It states, "[n]otwithstanding anything else to the contrary stated herein or in any related agreements, Affinia shall at all times maintain full supervisory responsibility, control and autonomy with respect to . . . patient care and treatment . . . ."  Doc. [9-2] at 3.  Thus, by their own Agreement, and notwithstanding anything else to the contrary, Affinia acknowledged that it maintained full "control" over Dr. Whitworth's "care and treatment" of Plaintiff.  *Id.*  True, that provision in the Agreement goes on to say that "patient care and the prescription of medicine shall *also* be subject to the supervision of the Vice Dean [of MOSDOH]."  *Id.* (emphasis added).  But it is not enough that Dr. Whitworth was "partially under the control of [MOSDOH]."  *See Wren*, 922 S.W.2d at 410.  Since Affinia did not, therefore, "totally" relinquish its "right of control over [Dr. Whitworth's] performance of the particular work at issue," Dr. Whitworth was not a borrowed servant.  *Wren*, 922 S.W.2d at 410.

Other provisions of the Agreement are in accord with this conclusion.  For example, the Agreement makes a distinction between "Faculty" and "Adjunct Faculty."  *Faculty*, it notes, are "designated University dental faculty," while *Adjunct Faculty* are "Affinia-employed dentists

approved by the University to serve as adjunct faculty." Doc. [9-2] at 2. This distinction is telling because elsewhere the Agreement notes that

> whenever a MOSDOH Faculty is charged with delivery of care and implementation of a Treatment Plan, either directly or by supervising a MOSDOH Student, MOSDOH shall be solely responsible for the patient's treatment and outcome ('MOSDOH Patient Matters') and shall hold harmless and indemnify Affinia against any resulting or related claims.

*Id.* Thus, the Agreement specifies that MOSDOH will hold Affinia harmless when designated University dental faculty are charged with delivery of care; yet it does not mention holding Affinia harmless when Affinia-employed dentists approved by the University to serve as adjunct faculty are charged with delivery of care. In the vein of *expressio unius est exclusio alterius*, this mention and exclusion buttresses the conclusion that Affinia did not relinquish total control of Dr. Whitworth. *See Disalvo Properties, LLC v. Bluff View Com., LLC*, 464 S.W.3d 243, 245 (Mo. Ct. App. 2015) (explaining the rule of construction that "the express mention of one thing implies the exclusion of another"); *see also Gen. Am. Life Ins. Co. v. Barrett*, 847 S.W.2d 125, 133 (Mo. Ct. App. 1993) (Breckenridge, J.) (noting that although more frequently applied to statutory construction, the *expressio unius* maxim is "also applicable to the construction of contracts"); *Jerseyville Mall, L.L.C. v. Shop 'N Save Warehouse Foods, Inc.*, 633 S.W.3d 523, 527 (Mo. Ct. App. 2021).

   c. *Dr. Whitworth was an Affinia employee for FTCA purposes at the time at issue.*

Lastly, the government argues that Dr. Whitworth was not acting within the scope of his deemed employment for FTCA purposes when Plaintiff allegedly sustained her injuries. The Court concludes that this argument fails for the same reason the government's borrowed servant argument fails. The government asserts that MOSDOH assumed exclusive control over Dr. Whitworth as Adjunct Faculty, Doc. [23] at 10, but the Court has concluded otherwise since,

under the Agreement, Affinia retained full supervisory responsibility, control, and autonomy with respect to patient care and treatment performed by Dr. Whitworth. *Cf. Knudsen v. United States*, 254 F.3d 747, 750 (8th Cir. 2001) (explaining that to "determine whether an individual is an employee or contractor" under the FTCA the "crucial question is the amount of control exercised by the government over the physical performance of the individual").

## CONCLUSION

Because the Court concludes that Plaintiff has met her burden in establishing that Dr. Whitworth was an employee under the statutory definition and because Affinia maintained control over Dr. Whitworth, who was acting within the scope of his employment with Affinia, the United States has waived its sovereign immunity under the FTCA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant United States of America's Motion to Dismiss, Doc. [9], is **DENIED**.

**IT IS FURTHER ORDERED** that, no later than **Monday, August 29, 2022**, Plaintiff shall file an Amended Complaint to name the proper Defendant and reflect Mo. Rev. Stat. § 538.210 in her Amended Complaint.

Dated this 18th day of August, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE